Number 18-1678 Andrew Sasser v. Dexter Payne Case Number 18-1768 Andrew Sasser v. Dexter Payne Very well, Ms. Fields, we'll hear from you first. Thank you, your honor. May it please the court, on behalf of Dexter Payne, I'm Kelly Fields with the Arkansas Attorney General's Office. We are here because the district court applied Martinez v. Ryan to grant relief to Andrew Sasser in habeas for two claims of penalty phase ineffective assistance that were adjudicated in Sasser's initial post-conviction proceedings and defaulted in the ensuing appeal. Martinez does not apply to claims that were adjudicated in state post-conviction and then defaulted on appeal. Cullen v. Penholster applies to adjudicated claims and Coleman v. Thompson applies to claims defaulted on appeal. In 2013, this court summarily remanded the claims and told the district court to hold an evidentiary hearing, but on the denial of rehearing, it clarified that the court should determine whether Sasser had properly presented the claims in the initial state post-conviction proceeding. Whether the claims were properly presented in that proceeding, of course, was not a matter for a hearing, but was a threshold question to be resolved by comparing the then present federal claims and the state court record. If they were the same claims, they were defaulted on appeal and Martinez did not apply, but on remand, the district court held the evidentiary hearing first. It then purported to conduct the textual review as it should have without considering the newly presented evidence. It appears to have misread the federal petition and concluded that the remanded claims were nowhere to be found in it, and that mistake served as its basis for going to the new evidentiary record to define what the remanded claims were, where the default had occurred, so as to determine whether it was even the type of default to which Martinez could apply. In fact, the claims alleged in the federal petition were presented in the state post-conviction proceeding and Sasser expressly acknowledged as much 20 years ago in on-the-record discussions with the district court and in an amended pleading and in motions for a hearing, but in 2013, when it was no longer advantageous for him to take that position, he obfuscated that fact and he doesn't seem to dispute it now, but argues that it's irrelevant because the district court held his newly presented evidence, rendered his claims unexhausted, defaulted, and subject to Martinez. We ask the court to reverse with directions to dismiss. Yes, your honor. What do you mean when you say the district court seemed to think that the remanded claims were not in the federal petition? Did you say that? I thought you said that. I did. The district court, it actually held the evidentiary hearing first and then it began its review. It had to determine whether the claims were defaulted, where they were defaulted, so it started with a review of the federal petition to determine what the alleged federal claims were. When it looked at that petition, the memorandum opinion indicates that it found only a general claim of ineffective assistance was raised, no specific facts. How can that be? How could this court remand claims that were not in the federal petition? They were there. Yes, that's an excellent question and they were there. That's why I didn't understand the district court to be saying that this court remanded weren't in the federal petition. I would think the district court would not come. I guess you think that's what it did. I thought it, but I understand the court took evidence and I thought it was saying that the new claims under this reading of Vasquez against Hillary were fundamentally altering some previous claims. Your honor, what the district court said about the petition was that it raised a general claim of ineffective assistance. It couldn't find the claims in the petition, so it went to the arguments and the evidence to determine what the remanded claims were, what the federal claims were. There's indication in the looking at a procedural history of the state post-conviction proceeding that the federal petition listed claims that had been raised, just a terse list of claims that had been raised in state post-conviction in rule 37. One of those was claim four in state post-conviction was a pretty comprehensive ineffective assistance claim, but it was only tersely mentioned in the history in the federal habeas petition. The reason I think that's what the federal court was looking at is because it also then said that, I think it referred to claim seven in the federal petition as though it were a claim alleged in the federal petition, but claim seven, the one that it identifies in its opinion is what's in the procedural history for the rule 37 petition. So, the court then, based on there not being anything other than a general claim in the federal petition, went to the evidentiary hearing and went to the arguments made after the evidentiary hearing on the merits of the claims. Well, if that's what happened, then are you suggesting that the court allowed Sasser to raise effectively new claims on remand that were not in the petition? No. The court actually, in its analysis, let me say that the federal petition contained, the court remanded four claims. The federal petition, two of those concerned trial counsels alleged failure to prepare and present, I'm sorry, to prepare and to timely investigate his psychological exam, timely request a psychological exam, and the appointment of an examiner. Those were in the federal petition. Those allegations were in the federal petition, and those are the claims that this court remanded. Those claims also were in the state petition. They were allegations in the state petition that obtained in a hearing. Where do you think what the district court is referring to as claims two and three came from? They came from allegations in the federal petition, and I'll try to find a site for that. Those allegations, I assume that this court found them in the federal petition and identified them for remand, and the federal court did not find them. Had it looked at paragraph seven in the petition, it would have seen those allegations verbatim. What the court did, had it conducted the textual review and properly concluded what was in the federal petition, it would have seen that the claims were there, and so Martinez didn't apply. I know, but you're still not really answering what you think that what the district court is referring to the second and third claims refers to. You're saying the district court did not find those claims in the federal petition, so where did they come from? Were they new claims that were developed in this evidentiary hearing? I thought that's what your brief was arguing, that they were new claims developed in the evidentiary hearing and the it could conform the petition to the new evidence, but now you seem to be saying something else. No, that's what the court did. It recognized that this court said the claims that it remanded, which must have come from the petition, were adjudicated in state court. It recognized that record, the new record, it concluded that new evidence changed the claims. That's correct, but a proper textual review would have precluded consideration because where the federal petition indisputably alleges ineffective assistance that was included in state post applies. Penholster tells us that at that point, any additional evidence introduced in federal court has no bearing on 2254D type review, regardless of whether the court had discretion to hold the hearing. Any Martinez inquiry should have ended at that point with a proper review of the pleadings because they showed Martinez didn't apply. I do want to say a few words. That alone is grounds for reversal, but I do want to say a few words about the court's consideration of the presented evidence. The court looked at the new evidence and argument presented on remand and concluded that the state and federal claims were fundamentally different because the factual basis had not been exhausted, but it didn't drill down to supply any analysis of what facts it thought were new and how they altered the factual basis or the legal basis of the claim so that it was truly a new claim with totally different factual predicate. Instead, it seems to have to ensure a timely and adequate in-depth social history investigation, but it focused on the differences in the mental health related evidence and theories developed in each case in state court and federal court. It never identified the facts that were supposedly unexhausted and made the claim new, and a lot of those overlapped with what was before the court in state post psychologist who testified below about the effects of chronic adversity related to the loss of Sasser's father when Sasser was two and his mother's maternal depression and poverty when considered with the level of Sasser's cognitive function, but that was opinion, not fact, and the court should have focused on the facts underlying that opinion to determine what was new. Many of those facts overlapped with the jury, for example, had heard evidence of the Sasser's father, the fact that the family had to pull together and work to make up for his loss. They may not have seen things like the birth and death records or the death benefits certificate that were introduced in the federal habeas hearing, but that doesn't seem like that would make the claims transform into something else. The jury also knew about some cognitive mental health issues. Mary Ann Seidel, a psychiatrist, testified at trial that she had diagnosed Sasser with antisocial personality disorder. Dr. Blackburn testified below that he was aware that when he testified at trial that poverty was a part of the culture in Louisville and that it limited the types of jobs people could get. He would testify in post-conviction that he agreed with the antisocial personality mental health disorder diagnosis, explained more about cognitive testing he had done with Sasser being at a sixth grade reading level. What does this have to do with the issues on appeal? I'm sorry, I'm just... You seem to be reading us a lot of evidentiary material. Maybe you could just tell us what you think is the error. The error, the first error is in conducting its textual review of the petition to determine whether the claims were the requisite type of claim that the district court erred. The Martinez inquiry should have ended there because the pleadings in federal court contained the claim and counsel averred 20 years ago that it was the same claim. He was trying to get a hearing on it in federal court to re-adjudicate what had gone on in state post-conviction with the failure to investigate and present mitigating evidence claims. Pinholster says that's a pleading matter, and so the inquiry should have stopped there because Martinez... Okay. You made that point. Do you have anything else to add? Yes. Only that the court, by considering the evidence and determining that it actually generated new claims, was simply error. It never identified... Even if it was applying Vasquez v. Hillary and considering that, there was no indication that the facts were substantially different. It relied on opinion testimony. The only facts that... Well, the most significant facts that were different were the opinions of Doctors Blake and Watson indicating that Sasser had organic brain damage, some moderate but not severe neurocognitive issues, and that the expert who testified on behalf of Sasser at the post-conviction hearing at the time of trial, who testified on behalf of him at trial, I'm sorry, had pending disciplinary proceedings against her and could have been attacked at trial. Do you have anything you want to say about 2254E2 and whether it precluded any of this evidence or finding a fact? It was done on... We do believe, yes. We believe that 2254D and E2 applied to preclude this evidence. 2254D applied to the state court rejection on the merits of these post-conviction claims and only would have applied to the default of those claims on appeal. Martinez would not have applied. Taking evidence would be wrong under E2 in federal court because we don't even get to that point if the textual review had been done correctly. Well, but say you get past the textual review, what is the role of 2254E2 at that point? If we get past the textual review... I'm not sure I understand the question, Judge Colleton. I'm sorry. I thought your position in your brief was that even if you got past the textual review, that is, even if these claims were not barred, not defaulted, and that Martinez did apply, that the court was forbidden to take new evidence unless it met the standard of 2254E2 on the merits of the claims. That's correct. That's correct. Taking new evidence, I mean, obviously this is not a newly pleaded claim in a federal petition as in Martinez and Trevino. It came to the district court by an erroneous hearing that transformed the claim, but at that point, if it was a new claim, it depended on the new evidence. Where one has failed to develop evidence in support of a claim that originated in state court, 2254E2 applies to preclude it, and the exceptions don't apply to an ineffective assistance claim. They require, obviously, a showing of the previous unavailability of the claim and a showing of actual innocence. Of course, an ineffective assistance claim can't satisfy that test. Ms. Fields, as I understand, isn't your fallback argument that if these were characterized as new claims, new federal claims, that they're barred as unauthorized successive habeas? Could you repeat that, Judge Brender? I'm sorry. Do I understand your argument correct? First off, that they're barred because of Martinez and the procedural default in state court, but if they're new claims, if they're truly to be characterized as new claims, that they're also barred as unauthorized successive habeas claims? No, that they're barred as successive. If the judge allowed Sasser to add new claims on remand, would they be barred as successive and unauthorized? They would be barred as successive if they were trying to add new facts to the record. That was somewhat related. One of the things we pointed out is how did the court get to these if there was no amendment? Yes, if they are actually presenting the same claim, but of course, we were back on remand on the first petition. The process is just defective, but yes, if he's raising new claims... Do you wish to save time? You're into your rebuttal time that you might want to save for the cross appeal. Do you wish to reserve or do you want to continue? I will reserve my time. Thank you, Your Honor. All right, Mr. Braden, we'll hear from you. May it please the court, my name is Scott Braden and with the Federal Public Defender's Office in Little Rock, Arkansas and I have the privilege today of speaking to you and representing Andrew Sasser. My first point is I think this case is much more simple than Ms. Fields makes out. All these issues about whether the claims here relate to the federal petition and the issue of whether 2254E2 is operative here have been resolved in 2013. A panel of this court clearly and unambiguously said that 2254E2 is not applicable here and does not prevent a hearing. It was a bad statement with respect to the Martinez issue. That is the default question as opposed to the merits of the claims that would have to be adjudicated if you got through the procedural default? Yes, but I think if Mr. Sasser gets through the default, as you say, by proving the default here, then the ADPA restrictions don't apply to this case because that means... Why not? Because there was no adjudication on the merits in the state court. These claims are fundamentally different than what was presented in state post-condition proceedings. Is E2 limited by adjudication on the merits? Yes, sir. Or is that subsection D that's limited? I think... Silly, I don't have the language in front of me, but I think the first sentence in E2 states that claims that aren't presented in state court or some language like that and by finding the procedural default here that they hadn't been presented in state court takes E2 out of the question and allows the federal district court to make a de novo review of the issues that were presented to him, which were fundamentally different than anything that was presented in the state court. So, and the issues about whether the issues... This was raised in the federal habeas petition. I'm the first to admit that the habeas petition in this case was not very artfully done, but the claim of ineffective assistance was set out there and I think the examples of ineffective assistance of counsel that are set out in there relate back or go to the post-conviction claims dealing with Mary Pat Carlson, the counsel that Ms. Fields has mentioned that Mr. Potter retained in this case, but no evidence was presented in state court dealing with Mr. Sasser's neurological impairment claim. And Ms. Sasser, I'm sorry, Ms. Fields made a mention here that a doctor for the state discussed that poverty was part of the climate of the community or something like that, but those kinds of claims do not go to the individualized nature of mitigation. Nothing went in to explain how the poverty that Mr. Sasser and his family suffered or the death of his family, how that impacted him and how that impacted his family. And the federal district court here found that had the jury heard this evidence, there is a likelihood that the outcome would have been different, that at least one juror would have voted for a sentence less than death. What about the concern that on remand, the claims that you developed are different from the claims that are in what you say was an inartful federal habeas petition and therefore they're either successive claims that should have been barred or they're abuse of the writ and should have been rejected per footnote 11 of the prior panel opinion. Could you speak to that? Yes. If I said that, I misspoke because what I was saying is that in the habeas petition, as Ms. Fields mentions, there are several examples of the claims presented in the state post-conviction petition. But also in there is a claim that Mr. Sasser was denied the assistance of a mental health expert, which is different than the claim presented in state court. So the evidence that was presented in state court, which I characterize as the Mary Pat Carlson evidence, which is the failure of the trial lawyer to work with the expert that he did retain and the failure of the lawyer to prepare that expert is completely different than the neurological impairment claim, which is much more profound and much more in depth. And that evidence was presented at the federal evidentiary hearing. And where is that in the petition that led to the remand? What part of the petition would you say raises what you're now calling the neurological impairment claim? Well, the first thing I would look at is the finding by the eighth circuit that there had been 16 different forms of ineffective assistance of counsel raised throughout this case. And there was an original petition and an amended petition. There was a second amended petition. And they boiled it down to four on page 851. Right. That's right. And I'm asking you, which of those is the neurological impairment claim and where is it in the petition that was before the panel at the time? Well, so the best... Sorry, excuse my fumbling here a second. It's in the second amended petition, which is document 23. And there is a reference in there. Sorry, find it here. Sorry, I had this marked earlier. So the petition talks about on page four, I have it marked as four, it wasn't paginated, about how nothing was done in the way of preparation of trial. And then it does talk about Mr. Potter obtaining a psychological examination. And that gets into the Mary Pat Carlson claim. But in here, the claim of ineffective assistance of counsel is alleged, but it's developed over time. This case, as you know, and I'm sure all of you are aware of this case, has been in court quite some time for a number of reasons. And these issues have been developed. And the Eighth Circuit has seen this for quite some time. So this evidence developed in federal court through the federal process. If there are no other questions about that, I would like to talk about Mr. Sasser's intellectual disability. So the other claim here before the court, the cross appeal, is the district court's denial of Mr. Sasser's claim that he is intellectually disabled. And this claim has a twisted history. It was presented in a hearing in 2010, and this court in 2013 remanded it back to the federal district court, because the federal district court had misapplied the clinical criteria in making this determination. And again, the federal district court did the same thing here. So one of the issues that, and I think it's clear, and I don't want to spend a lot of time on this point, but the courts are bound by the current medical diagnostic criteria. And that most recent diagnostic criteria is found in the Diagnostic and Statistical Manual, Volume 5. And in there, under the DSM-5, Mr. Sasser has to prove, and under Arkansas law, the statute, Mr. Sasser has to prove significantly sub-average general intellectual functioning. Then he also has to prove a significant deficit or impairment in adaptive functioning. And he has to prove, under the statute, he has to prove that they manifested in the developmental period or under the age of 18. Under the medical criteria, he has to prove that there was an onset in the developmental period, and Mr. Sasser has shown that. But the federal district court here, in applying this criteria, has gone outside the diagnostic criteria. It's created a new requirement that's not found in the medical community when it required Mr. Sasser to not only show that he had adaptive deficits inside the developmental period or the age of 18, and then to show that they also existed at the time that he committed this crime. And this is contrary to the medical community's diagnostic criteria, and certainly contrary to the criteria in DSM-5 or DSM-4TR, which the district court used. But under either diagnostic criteria, Mr. Sasser is intellectually disabled. Pause on that for a second, just so I want to make sure I understand your position. You're saying that the prisoner is only required to show intellectual disability in the developmental period, by which you mean before age 18? Yes. You know what you mean by the development, okay. And is not required to show that he was suffering from that disability at the time of the crime? If he has shown that he had adaptive deficits in the developmental period, and also shown that he had deficits in intellectual function, he's shown that he is intellectually disabled. That is all that's required. And what this court said... You mean because it automatically continues throughout the person's life, and so there's no need to prove it again at the time of the crime? It's a static condition? Is that what you're saying? Yes. Yes. Intellectual disability, people don't get better from intellectual disability. And if you look at the DSM-5, the current diagnostic criteria, it talks a lot about support. In other words, how do people with intellectual disability survive in the world, so to speak? Well, most of them need support. Most of them need the help of family, or friends, or hospitals to survive in the world, and they usually get it. For instance, Mr. Sasser here had supports at some point. At some points, he didn't have supports. When he didn't have supports, he had more life struggles without the supports. He needed support, the families and friends, and that is the hallmark of the diagnostic criteria in the DSM-5. So, for instance, the question that you ask about, well, do we look at stuff beyond this developmental period? Well, of course, you can look at stuff beyond the developmental period, but what the Eighth Circuit has said in 2013 is you can't create a composite. In other words, you can't look at evidence in different parts of Mr. Sasser's life to create, I think, the exact language of the court is you can't mix and match different points of Mr. Sasser's life to create a picture of him. You have to look at the relevant information. You cannot create this composite, and that's what the federal district court here was doing. It was creating a composite because it discussed Mr. Sasser's academic deficits, which fall into the conceptual domain of the DSM-5, but yet, at the same time, it was looking at evidence, in this case, looking at saying that he didn't have academic deficits 11 or 12 years outside of the developmental period because he couldn't show them at the time of the crime, but it just makes me wonder what is he supposed to show when he's 20? The best evidence of deficits in the conceptual domain, the first domain found in the DSM-5 usually is academics, and Mr. Sasser has shown that. He's shown a great deal of evidence of that, and what the district court then later was required him to show it sometime later, which this court has said that you can't create this composite. Another thing that the federal district court did, just particularly in this adaptive deficit, but also throughout all the others, is he relied on lay stereotypes, which again, you can't. The medical community does not rely on lay stereotypes. For instance, he said that Dr. Moore, the state's expert, who through interviewing several people, had said that...or some school friends had said that Mr. Sasser didn't do very well at school, attacking the academic deficit, because he just didn't try hard enough or he wasn't motivated enough. That's a lay stereotype of what people expect out of intellectually disabled people. Certainly, it could be that Mr. Sasser wasn't motivated because he wasn't able to complete the academic task before him because he was intellectually disabled. I think that happens a lot in these cases. He wasn't able to perform because he's intellectually disabled. I think Dr. Moore also talked in his report and at the 2010 hearing about people that he interviewed who talked about Mr. Sasser's family not being all that bright or not being as helpful to him as families were, which I think under the DSM-5, that evidence shows that Mr. Sasser needed support. That, again, as I say, is the hallmark of deficits in the conceptual domain. Another thing I want to talk briefly about is the difference between the DSM-4 and the DSM-5. There's been a lot of debate with Ms. Fields and I in the district court over what measure should the district court have used. The DSM-4, which came out, I think, in 2009, and a lot of this is detailed in my brief, but it came out in...whenever it came out, the district court used that as the diagnostic criteria that it was going to look at. During the course of this litigation, I think it was in 2013, the American Psychological Association came out with a new diagnostic criteria, an updated one, the DSM-5, and I'm sure all of you are aware of this. Did that change the meaning of the Eighth Amendment when the APA updated the DSM? It didn't change the meaning of the Eighth Amendment, but it changed the current diagnostic criteria. In Jackson versus Kelly, a 2018 case out of this court, this issue is discussed a lot, and this court said, well, the best measure of the diagnostic criteria is found in the DSM-5, and I think that's true. The district court here used the DSM-4 to make this diagnostic criteria, and there's been some debate that, well, the standard basically... I'm just concerned whether that means every time this association updates their manual, that triggers a new Atkins proceeding? No, sir. At the implication of your... No. Okay. Well, give me some comfort that that isn't the implication of what you're saying. What the district court is doing in lieu of a clinician is making a diagnosis. Did Mr. Sasser suffer from intellectual disability? In other words, did he have the two first criteria that the deficits in intellectual functioning and impairment in adaptive functioning, and did he show that that happened in the developmental period? Science changes, and so as these cases move on, then the clinicians look at different things. Here... Counsel, how does this square with the Supreme Court's statement in Moore that being informed by the medical community doesn't mean adhering to everything in the latest guide? Well, yes, I agree, and the Supreme Court has said that in Moore, but it's been very clear in Hall, and it's been very clear in both Moore cases that the state cannot deviate from the diagnostic criteria. Over here, in this case, the Federal District Court can't deviate from the Federal District Criteria. Here, the Federal District Court has deviated from the diagnostic criteria, whether it be the DSM-IV or whether it be the DSM-V by creating a new requirement. It's creating the existence of adaptive deficits, not just in the developmental period, but that they must also what the Supreme Court is saying in Moore. This isn't just some minor deviation. Didn't the District Court conclude, though, that he didn't meet the standard even during the developmental period? I don't think that's true. The Federal District Court here wrangled with a lot of evidence, and in the end, the Federal District Court said... How about page 23 of the order? Because the court finds below that Sasser has not met his burden to show that he had a significant deficit or impairment in adaptive functioning manifesting no later than the age of 18, the court also finds here that Sasser has failed to show he had a significant sub-average general intelligence that manifested no later than the age of 18. Is that a finding that he didn't meet it even during the developmental period? That's the District Court's finding, but that is not correct because what the Federal District Court was saying... How is it clearly erroneous? It is clearly erroneous because it's contrary to diagnostic criteria because what the District Court is saying is, I've looked at all this evidence of intellectual functioning, and I'm unsure what to do about it. But I also know, if you read on, and I think it's right there in that same paragraph or maybe the paragraph above, that adaptive deficits are the best evidence of whether somebody's If Mr. Sasser can show that he is intellectually disabled or can show that he has adaptive deficits, and under the DSM-IV, he has to show two, but under the DSM-V, he only has to show one. If he can show that, then he is, by any measure, intellectually disabled. To get there, to sort that out, the District Court looked at the adaptive deficits, and that's where I'm saying that he was wrong. The District Court improperly applied the diagnostic criteria to determine whether the adaptive deficits existed. The most salient one, I think the one where the most evidence is, is Mr. Sasser's academic deficits or deficits in the conceptual domain. What the District Court is saying, if there's evidence of that and it exists, then he's intellectually disabled. But he applied the wrong standard in doing that. He basically said that these academic deficits do exist, but he hasn't shown what he says. It does not, however, demonstrate that any limitations were significant at the time that the crime was committed, and that is not the diagnostic criteria. He is taking evidence from 11 or 12 years later to add into or to look at, to decide whether he's shown academic deficits in the developmental period, and because he can't show that at the time of the crime, he's saying he doesn't have academic deficits. And I could be wrong, but I read it to suggest that he found, even during the developmental period, that your client didn't meet the standard. So what if he went on to look beyond that? If there's a conclusion that he didn't meet it during the developmental period, isn't the I disagree with that. I think what he was saying is that the best measure, the language that he talks about is the best measure of intellectual disability is adaptive deficits. So he looked at the intellectual functioning question, and then he looked at the academics, and then he did what this court has said that you cannot do, you cannot create a composite. So to make the determination of whether Mr. Sasser had adaptive deficits or a deficit in the conceptual domain, he mixed and matched these different parts in Mr. Sasser's life. So I don't agree with that. I think that the district court was looking at adaptive deficits to make a determination of whether Mr. Sasser was actually disabled overall. Where do you think the Supreme Court says that it's improper to look at disability at the time of the crime? Isn't the whole point of Atkins that people should be exempt from the death penalty because they're less culpable, and there's less likelihood of on the person's capacity at the time of the crime? So why would it be improper to consider that? I agree that the issue is culpability, and that's what the Supreme Court has said, but what it has also said is that a person with intellectual disability is exempt under the 8th Amendment from execution. So if, and the Supreme Court has been very clear in Hall and both Moore cases, and this court has been very clear in Jackson and in Sasser, that that determination has to be made using the diagnostic criteria of the medical community. The medical community says that this initial determination has to be made at the age of onset or in the developmental period. So if Mr. Sasser can show what he has done, that he has these two deficits in intellectual functioning and deficits in adaptive behavior in the developmental period, that's all he needs to show that he's intellectually disabled. As we discussed earlier, this is not something that goes away or changes over time. I think being institutionalized for quite some time helps people. That's why we have hospitals for people that are profoundly disabled. The other thing that I think is most important to look at is the need for supports, because that's what the medical community looks at now is the need for supports. Mr. Sasser has shown that, and I think that's borne out in the evidence presented by the state's own witness, his need for supports for academics and at work and other things. I'm running out of time. I think the issue of the Martinez issue and the issue of ineffective assistance of counsel is simple. The court remanded it back to answer certain defined specific questions. The district court viewed very closely to those questions and found that Martinez had been violated and granted relief, and I would ask you to affirm that, but the district court was incorrect in deciding that Mr. Sasser was not intellectually disabled, and I'd ask you to reverse that. Thank you. Very well. Thank you, Mr. Braden, for your argument. Ms. Fields, we'll hear from you in rebuttal, or I assume, cross a pally argument. Thank you. Very quickly, I do want to touch on the Martinez issue and Mr. Braden's reference just to try to clarify the 2254D and E2 interplay. In a sense, this case is almost indistinguishable from Penn-Holster, where the district court held a hearing on the mistaken view that EDPA did not apply. It didn't think it applied. It received abundant new evidence vastly different from that and discrediting that that had been presented in state post-conviction in a similar mitigation-based ineffective assistance claim. The case eventually wended its way out. The Ninth Circuit ultimately held, the district court held the claim had not been adjudicated because of the additional fact, the additional evidence that had been received erroneously in the district court. The Ninth Circuit said, no, 2254D did apply. It was adjudicated. When that went up to the US Supreme Court, there was some dispute between the parties. In this instance, it was the state that was arguing that the new evidence actually was that the claim had been originated as the same claim, but the new evidence erroneously taken in the district court had rendered it unadjudicated because the factual basis was so vastly different. The US Supreme Court tabled the E, didn't decide the E2 issue because it indicated that a textual review, there was no dispute that the claims raised in the federal petition were the same claims raised in the state petition, and that meant taking evidence at that point, 2254D kicked in and no evidence could be considered. It might be able to be considered if there were an exception to the applicability of 2254D. On that note, I just want to point out that this court remanded the claims, that it identified them as two claims of penalty phase ineffective assistance with respect to the and volume one of the appendix, our appendix at page 91 contains the allegations in which those claims appear in the federal petition and volume four appendix pages 1218 to 19 and 1222 to 23 contain those specific allegations as they are presented in the state post-conviction petition. And so, on that note, textual review tells us that the claims were the same and the new evidence, if it is able to be considered, is barred by E2, although I will say that the Supreme Court in Penholster did not have to decide that issue. Can you read those pages? Volume four. Yes, volume four, the allegations appear. There were three separate mitigation-based, penalty-based claims and one was combined with a guilt phase. Volume four, appendix 1218 to 19 and 1222 to 1223, this is where at least these allegations appear. That's what I thought you said, but volume four begins at page 1236. I'm sorry, volume three, your honor. My apologies. Very quickly on the Atkins issue, Mr. Sasser contends that the time of the crime was not a relevant time period. In Sasser 2, this court made clear that the relevant time period for the assessment of what Sasser's function was at the time of the crime or the hearing and separately for the onset prong, it was in the developmental period up to age 18. That is, of course, a fundamental premise of Atkins. It was focused on culpability at the time of the murder and merely demonstrating poor performance in a given domain during the developmental period was not sufficient to carry the day, either as in that period or the time of trial. This is partly because, as Sasser admits in his briefing, unlike intellectual function, the adaptive function, especially for one who is at the margins under Atkins, can be ameliorated so that he wouldn't be considered intellectually disabled later at the time of the crime. The court here simply observed that it had nothing that demonstrated dysfunction at the time of the crime. Mr. Braden indicated that the court forced him to show academic skills were deficient at the time of the crime. That is not what the court did. Mr. Sasser provided the court with the three domains, the evidence in the three domains that it wanted the court to consider. Consider when applying Atkins and applying the Arkansas test. One of those areas were the academic skills. That was all of the evidence that Mr. Sasser had given the court on the academic skills. The court was trying to do both, figure out whether the evidence presented to it actually showed the deficits at the period of development, the early development period, and whether it persisted, whether those deficits persisted at the time of the crime. It wasn't forcing Mr. Sasser to prove that. It was trying to find, from the evidence that Mr. Sasser was relying on, whether it could satisfy any part of the test, whether at the time of the crime or in the developmental period. It wasn't adding anything on the test. Just one moment. I think what Mr. Braden said was that the court employed lay stereotypes when considering the academic domain as an example. He misconstrues what the court did. The evidence of intellectual sub-average. That's why the court went to the adaptive functioning evidence. When considering evidence of Sasser's weak academic performance during that period, it had to determine whether the level of his performance was a function of significantly sub-average abilities or simply sub-average abilities. That would have made the difference. To make that determination, it had to consider that evidence and Sasser's self-report and the report of a childhood friend that he had the skills to do better, but he wasn't motivated. He didn't make the effort because he didn't have the encouragement or the demand from home to be better. With that evidence calling into question whether the poor performance was due to sub-average or significantly sub-average cognitive abilities, the court had to go through that as part of the holistic review in trying to determine whether by a preponderance Mr. Sasser had demonstrated the existence of that deficit. With that, I will simply ask that the court reverse with respect to the Martinez issues and affirm with respect to the Atkins issues. Very well. Thank you for your argument. Thank you to both counsel.  Thank you for appearing by video conference. The case is submitted and the court will file an opinion in due course.